IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK JOHNSON,                                   )
                                                )
                    Plaintiff,                  )
       v.                                       )       Case No. 09 C 6940
                                                )
THOMAS DART, Sheriff of Cook County, and        )       Judge Virginia M. Kendall
McCLENDON, Deputy Sheriff of Cook County,       )
                                                )
                    Defendants.                 )

## MEMORANDUM OPINION AND ORDER

Plaintiff Mark H. Johnson ("Johnson") filed suit against Tom Dart, Sheriff of Cook County,

and Unidentified Cook County Deputy Sheriff McClendon (collectively "Defendants") alleging that

Defendants used excessive force against him, in violation of 42 U.S.C. § 1983. Defendants claim

that the parties reached a valid oral settlement when Johnson's former attorney and the Defendants'

attorney orally agreed that Defendants would pay Johnson $500 to dismiss the lawsuit. Defendants

therefore move for the Court to enforce the settlement. For the following reasons, the Court denies

the Motion to Enforce the Settlement Agreement.

## FINDINGS OF FACT[1]

When Defendants initially moved to enforce the settlement and close the case, the Court

reviewed the merits and determined that an evidentiary hearing was necessary to elucidate two

issues: (1) the authority of Johnson's attorney, Elizabeth Bryant ("Bryant"), to settle the case for

$500; and (2) whether the purported oral settlement agreement between Bryant and Defendants'

---

[1] The Court's findings of fact are based on testimony at the evidentiary hearing held on this issue. The transcript citations refer to the official transcript from this hearing.

counsel, Colleen Cavanaugh ("Cavanaugh"), is enforceable. The following factual findings are from the testimony at the evidentiary hearing.

On November 10, 2009, the Court appointed James Helenhouse ("Helenhouse") to represent Johnson, an inmate incarcerated at the Lawrence Correctional Center. (Tr. at 11:12-17.) Bryant, from the same firm as Helenhouse, filed her appearance on February 22, 2010. (Tr. at 12:9-13.) A few days later, on February 24, Bryant filed an Amended Complaint on behalf of Johnson. (Tr. at 13:1-5.)

Bryant met with Johnson in-person at Lawrence Correctional Center on May 7, 2010. (Tr. at 48:3-15.) The purpose of the meeting was to generally discuss the facts of the case and familiarize Johnson with the nature of Bryant's representation, namely that she would be filing documents and making court appearances on his behalf. (Tr. at 13:23-14:13.)

On July 23, 2010, counsel for Defendants, Cavanaugh, contacted Helenhouse and asked him to make an opening settlement demand. (Tr. at 16:13-15.). Helenhouse and Bryant therefore arranged to talk with Johnson over the phone about the possibility of settling the case. (Tr. at 16:15-16.) The discussion between Helenhouse, Bryant, and Johnson took place over the phone in late July 2010. (Tr. at 16:19-21.)

During the call, Bryant and Helenhouse advised Johnson that $5,000 seemed like a reasonable opening demand, but it was unlikely that the Defendants would accept it. (Tr. at 18:1-7.) Johnson indicated that he thought the case could settle for much more than that, especially if Bryant and Helenhouse were able obtain a videotape apparently capturing the incident. (Tr. at 49:20-50:5.) Before the conversation ended, Bryant and Helenhouse asked Johnson if he would be willing to accept a settlement offer as low as $500. (Tr. at 19:8-21; 61:23-62:2.) In response, Johnson did not

specifically indicate yes or no, and stated that he just wanted to "get this over with." (Tr. at 50:4-5; 62:1-2.) Johnson testified that this response was not intended to indicate agreement to the $500 amount; rather, by saying "get this over with," he meant receiving a satisfactory amount of compensation from Defendants along with an admission of wrongdoing. (Tr. at 62:11-63:20.) Besides the dollar value of settlement, Bryant and Helenhouse did not discuss with Johnson any other settlement terms or, in general, the legal implications of settling. (Tr. at 33:11-14.) For example, they never mentioned to Johnson that settlement would release the Defendants and prevent Johnson from further pursuing his claims. (Tr. at 33:3-23.)

Soon after this discussion, Johnson realized that proving his case largely depended on the missing videotape; otherwise, it would simply be his word against the guard who allegedly used unjustified force against him. (Tr. at 52:2-13.) He wrote a letter, dated August 2, 2010, asking Bryant to obtain the videotape before going forward with settlement discussions. (Tr. at 37:1-4.)

Believing that Johnson had expressly given her authority to settle the case for $500, on August 3, 2010, Bryant and counsel for Defendants, Cavanaugh, discussed settlement over the phone. (Tr. at 21:22-23.) Bryant made an initial demand of $5,000, Cavanaugh countered with an offer of $200, and Bryant indicated that she would not go lower than $500. (Tr. at 21:15-20.) Cavanaugh and Bryant then agreed to settle the case for $500. (Tr. at 21:20-21.) They discussed no other specific terms at this time. (Tr. at 22:2-6.)

On about August 5, after the settlement discussion, but before Johnson received notification of the alleged $500 agreement, Bryant received the August 2 letter from Johnson requesting that she defer settlement discussions pending recovery of the videotape. (Tr. at 24:7-24.) As a result, at the August 10 status the Court did not enter an order dismissing the case. (Tr. 22:12-23:13.)

Bryant sent Johnson a letter explaining that he was bound by the settlement. (Tr. at 24:25-25:4.) She also attached the draft settlement agreement to the letter. (Tr. at 25:6-9.) Johnson challenged Bryant's authority to settle the case in a response letter. (Tr. at 27:2-10, 14-20.) Ultimately, Johnson refused to sign the written settlement agreement. (Tr. at 58:15-17.) Bryant testified that, based on her interactions with Johnson, he did not sign the agreement because he was dissatisfied with the $500 amount. (Tr. at 40:21-41:19.) Johnson, however, testified that he took issue not only with the $500 amount but also with paragraph 5 of the agreement, which stated that Defendants' settlement should not be construed as an admission of wrongdoing. (Tr. at 57:1-58:17.)

## DISCUSSION

Illinois law governs the validity of a settlement agreement because Bryant and Cavanaugh executed the alleged agreement in Illinois. *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002). Under Illinois law, an enforceable oral settlement agreement requires offer, acceptance, and a "meeting of the minds" as to the material terms. *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir. 1995). The material terms of the settlement agreement must be "definite and certain," so the Court can determine when a breach occurs. *Dillard v. Starcon Intern., Inc.*, 483 F.3d 502, 508-09 (7th Cir. 2007). Specifically, a material term is a provision that goes to the "heart" of the settlement, as evidenced by the parties' conduct during settlement negotiations. *Id.* at 508-09 (certain provisions are not "material as a matter of law," but rather depend on whether a party communicates during settlement negotiations that a specific term must be part of the agreement).

A threshold inquiry before determining the validity of the terms of the agreement, however, is whether the attorney that entered into the agreement on behalf of a client had the proper authority to do so. An attorney's representation of a client does not automatically confer on the attorney the

authority to compromise or settle the case. *See Brewer v. Nat'l R.R. Passenger Corp.*, 649 N.E.2d

1331, 1333-34 (Ill. 1995). Instead, the attorney must receive the client's "express authority" to settle.

*Id.* at 1334. As is the case here, "[w]here a settlement is made out of court and is not made part of

the judgment, the client will not be bound by the agreement without *proof of express authority*."

*Shapo v. Tires 'N Tracks, Inc.*, 782 N.E.2d 813, 824 (Ill. App. Ct. 2002) (emphasis added). In this

situation, the Court does not assume that the attorney had the required authority; instead, the

Defendants have the burden to affirmatively prove that Bryant had proper authority to settle the case

for $500. *Id.* at 823-24; *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 999 (7th Cir. 2001). Finally, where

settlement is reached outside of court, "opposing counsel is put on notice to ascertain the attorney's

authority. If opposing counsel fails to make inquiry or to demand proof of the attorney's authority,

opposing counsel deals with the attorney at his or her peril." *Brewer*, 649 N.E.2d at 105-06.

Here, Defendants assert that Bryant had authority based on Johnson's statement that he just

wanted to "get this over with" in response to Bryant and Helenhouse asking if he would be willing

to settle for as low as $500. While Johnson did not object to the $500 figure, he did not specifically

manifest an intent to accept it either. Looking at this statement alone, there cannot be "express

authority" without an unambiguous "yes" type of response, which Johnson did not provide. *See, e.g.,*

*Malone v. Godinez*, 59 Fed. Appx. 827, 830 (7th Cir. 2003) (defendants failed to make "affirmative

showing" that client authorized attorney to settle the case where client asserted under oath that he

neither agreed to the settlement terms nor authorized his attorney to enter settlement and other

evidence of authority was ambiguous); *see also Robinson v. Ford Motor Co.*, No. 4:03CV00415GH,

2007 WL 666843, at *3 (E.D. Ark. Feb. 27, 2007) (denying motion to enforce settlement because it

was ambiguous whether attorneys had express authority to settle for clients without having to present

to them the offer for final approval); *cf. Pohl v. United Airlines, Inc.*, 213 F.3d 336, 339 (7th Cir. 2000) (objective communications between client and attorney coupled with client raising no objection post-settlement clearly established actual authority to settle).  Similarly, Defendants cannot lean on Bryant's testimony that she believed Johnson gave her express authority to settle.  *Higbee*, 253 F.3d at 997 (attorney's testimony that client gave him authority to settle, by itself, was insufficient to overcome the general rule that settlement reached in client's absence is not presumed).

The details of the discussion on settlement authority and Johnson's reaction to the "finalized" agreement also bear on the issue of express authority.  First, the conversation only touched on the dollar value that Johnson would potentially accept to settle, nothing else.  Johnson, who has never been in a civil lawsuit and is currently incarcerated, was never informed about the legal effect of settlement, namely that he would forfeit his ability to pursue claims against the Defendants.  It was never explained to Johnson what it meant to "settle" the case, nor did he have even a general sense of the terms likely to comprise the agreement.  These unique facts are more consistent with Bryant having the authority to simply explore settlement options.  Second, Johnson immediately objected when Bryant informed him of the "settlement."  In fact, Johnson sent a letter before receiving notification of settlement that asked Bryant to stop all discussions with Defendants.  *Cf. Hernandez v. New Rogers Pontiac, Inc.*, 773 N.E.2d 77, 80 (Ill. App. Ct. 2002) (uncontradicted evidence showed that attorney had express authority to settle, due partly to client's immediate response to attorney that settlement was "great" and "fine"); *Pohl*, 213 F.3d at 339 (client's statement after settlement of "okay, great, they settled it" was "hardly the reaction one would expect of someone who has not given his attorney the authority to settle the case").

Johnson's repeated insistence on obtaining the videotape of the incident also undermines any suggestion that he gave Bryant express authority to settle for $500. Johnson requested the videotape numerous times because it allegedly supported his excessive force claim. During the late July 2010 discussion on settlement authority, Johnson referred to the videotape in questioning the initial offer of $5,000 as too low. As such, not only did Johnson fail to give express authority for the $500 lower limit, but he also indicated displeasure with the $5,000 initial offer, which he felt undervalued his case. Moreover, Johnson's request for the videotape during the discussion on settlement authority is an earlier indication of what he eventually articulated in his August 2 letter: that he did not want to be bound before exploring the availability of the videotape.

These facts, taken together, show that Johnson did not give Bryant express authority to settle on his behalf for $500. Defendants failed to carry their burden of affirmatively proving that there was express authority, so the Court cannot enforce a settlement agreement that did not effectively bind Johnson. The Court therefore need not address whether the oral settlement agreement is enforceable.

### CONCLUSION AND ORDER

For these reasons, the Court denies Defendants' Motion to Enforce the Settlement Agreement.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 26, 2011